***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. Plaintiff alleges that he sustained a compensable injury by accident on May 8, 2008 to his right arm.
2. Defendants denied the compensability of plaintiff's May 8, 2008 injury.
3. Defendant-employer is Ingersoll Rand.
4. Defendant-carrier is Gallagher Basset Services, Inc.
5. Defendant-employer regularly employed three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
6. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
7. Plaintiff's average weekly wage at the time of injury was $684.53.
8. The parties participated in a mediated settlement conference on March 20, 2009. Defendants have paid the entire mediation fee in the amount of $700.00. Pursuant to Rule 7(c) of the Rules for Mediated Settlement Conferences, defendants are entitled to a credit in the amount of $350.00 for payment of plaintiff's share of the mediation costs. Defendants may withhold funds from any award made to plaintiff for this purpose.
9. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Various Stipulated Documents, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 i. Industrial Commission Forms;
 ii. Designation of Mediator; *Page 3 
 iii. Report of Mediator;
 iv. Medical Records;
 v. Employment Records;
 vi. Plaintiff's Responses to Defendants' First Set of Interrogatories and Request for Production of Documents and;
 vii. Plaintiff's Verified Supplemental Discovery Responses.
 b. A Packet of Additional Medical Records, which was admitted into the record and marked as Stipulated Exhibit (3).
10. Also made part of the record are the lay depositions of Ms. Marion McKenna, Mr. Mike Dupree and Mr. Matt Sloan and the expert deposition of Dr. George Veasy.
 *********** ISSUES TO BE DETERMINED
1. Whether plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on May 8, 2008, and, if so, to what indemnity and medical compensation, if any, is he entitled;
2. Whether plaintiff was involved in an intervening and superseding event on September 18, 2008; and
3. What, if any, rights of subrogation do defendants have as a result on the event occurring on September 18, 2008.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was forty-seven (47) years of age with his date of birth being October 22, 1962. Plaintiff obtained a bachelor's degree in 2006. Prior to his employment with defendant-employer, plaintiff worked as a substitute teacher and teacher's assistant, as a technician, strength-training coach for the Moore County Schools and as a machine operator for Purell.
2. Plaintiff began his employment with defendant-employer on October 28, 2007 as an assembler. The plant in which plaintiff worked constructed engine starters. As an assembler, plaintiff's duties required him to lift approximately eighty (80) pounds. During his employment with defendant-employer, plaintiff also worked in shipping and receiving, on the packing line, and tested starters.
3. On May 8, 2008, plaintiff was performing leak testing, which occurs after starters are assembled. Assembled starters are moved onto a cart and then moved by a hoist from the cart to a table upon which they were leak tested. In the plant, the term hoist and balancer are used interchangeably. The balancer has two cables coming down from the ceiling on a moving track. One has a J hook that is used to pick up and move the starters, and the other cable has a control box by which the hoist is controlled. The control box has two buttons, a green one to move a starter up and red one to move a starter down. Once starters are raised, workers guide and push them from the cart to the leak testing table.
4. Often, workers used their dominant hand on the control box and their non-dominant hand to guide a starter on to the hoist's J hook. However, just prior to his injury, plaintiff was using his non-dominant left-hand to operate the control box, and his dominant right-hand to guide the starter. For the leak test, a starter would be laid on its side. After the starter is *Page 5 
placed in this manner, the J hook is removed from the round opening at the top of the starter. Next, the up button is used to move the hoist up out of the way.
5. On the date in question, as plaintiff was removing the hoist's J hook from the starter, it suddenly rose, catching his arm and jerking it quickly upwards. This occurred either as a result of a mechanical malfunction, as plaintiff contends, or due to plaintiff unintentionally touching the green up button.
6. Mr. Ben Harris, who began working for defendant-employer in March 2006, testified that in approximately September 2007, he began working on the balancer machinery and that balancer plaintiff was using on May 8, 2008 had an inconsistent rate of ascension. Mr. Harris further testified that sometimes the hoist would move erratically and quickly in an upward direction with and without having a starter attached. Additionally, Mr. Harris testified that the control box for the balancer used by plaintiff on May 8, 2008 could be operated with either the left or right hand, while using the other hand to guide the starter.
7. Mr. Rufo Sanchez is defendant-employer's production manager and engineering manager. Mr. Sanchez testified that the control box for the balancer used by plaintiff on May 8, 2008 could be operated with the left hand, with the J hook being guided with the right hand without crossing the cables if the worker approached the balancer from the assembly side of the plant.
8. Mr. Matt Sloan, who was employed by defendant-employer as a team leader, and who was also involved in reporting workers' compensation claims, testified that plaintiff came to him sometime after the incident and explained that he injured his right shoulder with the hoist. Mr. Sloan further testified that the type of hoist plaintiff was using in 2008 is no longer in the *Page 6 
plant and that there had been complaints about a rate of retraction of the hoist that existed in May 2008.
9. Mr. Michael Dupree, employed by defendant-employer for thirty (30) years, testified that he is the lead worker for balancers, hoists and control boxes. Mr. Dupree further testified that the control boxes operated based on the degree of pressure applied to the relative button. Additionally, Mr. Dupree testified that there were reports of inconsistent rate of retraction with the balancers and hoists.
10. Plaintiff's testimony regarding the circumstances of his injury on May 8, 2008 is accepted by the Full Commission as credible. This is so in part because of the corroborative testimony of Mr. Harris, Mr. Sanchez, Mr. Sloan and Mr. Dupree.
11. The circumstances of plaintiff's injury on May 8, 2008 constituted an interruption of plaintiff's regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
12. On May 8, 2008, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
13. Two days after his injury by accident, plaintiff awoke experiencing severe right shoulder pain and sought treatment at an Urgent Care facility. At that facility, plaintiff was assigned light duty work restrictions.
14. Following a June 21, 2008 MRI, plaintiff was diagnosed as having an osteochondral injury, tendinopathy and rotator cuff arthropathy of the right shoulder. On July 25, 2008, plaintiff was examined by Dr. George Veasy who concurred with the prior diagnosis and administered an injection, which only provided minimal relief. Also on that date, Dr. Veasy *Page 7 
assigned light duty work restrictions of no overhead work and maximum lifting of twenty (20) pounds.
15. With plaintiff's symptoms continuing, on October 29, 2008, Dr. Veasy recommended a right shoulder arthroscopy procedure to repair plaintiff's partially torn rotator cuff. However, at that time, plaintiff was hesitant about proceeding with surgery, and Dr. Veasy referred him to Dr. Mark Brenner for a second opinion.
16. On November 18, 2008, plaintiff was examined by Dr. Brenner, who noted that plaintiff's light duty work was aggravating his right shoulder. Dr. Brenner further noted that plaintiff's injury consisted of an internal deraignment of the right shoulder with a lateral tear and a partial fitness rotator cuff dysfunction. Dr. Brenner agreed with Dr. Veasy's opinion that surgery was warranted.
17. Following his appointment with Dr. Brenner, plaintiff contacted Ms. Sharon West, the claims adjuster, and informed her that he needed to undergo surgery and be excused from work. Plaintiff was advised by Ms. West that Dr. Brenner was not authorized to make such a determination and that he had to get appropriate documentation from Dr. Veasy.
18. On November 21, 2008, plaintiff returned to Dr. Veasy who medically excused him from work as of November 18, 2008 pending surgery and provided a note for Ms. West. At that time, plaintiff believed that obtaining this note was what defendants required to proceed with the surgery after his conversation with Ms. West.
19. From November 21, 2008 through the present, plaintiff remained out-of-work due to being unable to undergo the recommended surgery after defendants' denial of his claim, and because of a lack of personal financial means. At the hearing before the Deputy Commissioner, plaintiff testified that he still desires to have the shoulder surgery so that he can return to normal *Page 8 
functioning and to work. Plaintiff also testified that while on light duty, assembling kits was the only job that did not exacerbate his symptoms but that defendants would not accommodate his request to only perform that type of work.
20. Defendants treated plaintiff's claim as if it were accepted until surgery was recommended by his authorized treating physician, Dr. Veasy, and Dr. Brenner, paying all medical expenses.
21. Prior the denial of his claim, on September 19, 2008, plaintiff was involved in an unrelated motor vehicle accident from which he sustained a biceps injury. After plaintiff was examined by Dr. David Fedder on December 31, 2008, Dr. Fedder clearly denotes in his records that plaintiff had sustained two distinct injuries, one a bicep strain resulting from his motor vehicle accident that was fully resolved and the second being an unresolved work-related right shoulder condition.
22. Based upon the credible lay and medical evidence of record, the Full Commission finds that the September 19, 2008 motor vehicle accident in which plaintiff was involved was not an intervening or superseding event. Accordingly, defendants have no right of subrogation.
23. On April 30, 2009, plaintiff's employment with defendant-employer was terminated due to a work-force reduction.
24. Ms. Marion McKenna, CDMS, CRP testified regarding the mechanism of plaintiff's injury. However, the Full Commission gives little weight to her testimony or opinions due to the fact that she did not know whether or not the hoist she observed operating at the plant was the same one used in the leak testing area in May 2008.
25. Dr. Veasy, an expert in orthopedic surgery, opined that the injury to plaintiff's right shoulder was consistent with plaintiff's description of how the injury occurred. Dr. Veasy *Page 9 
further opined that the key to how plaintiff was injured was the suddenness of the jerk of the cable, as opposed to the rate of retraction.
26. On the issue of causation, Dr. Veasy opined that plaintiff's May 8, 2008 injury by accident was the cause of the right shoulder conditions for which he treated plaintiff and recommended surgery.
27. Based upon Dr. Veasy's testimony, plaintiff remains medically excused from all work until such time as he undergoes the recommended surgery.
28. Plaintiff's May 8, 2008 injury by accident caused or significantly aggravated the right shoulder conditions for which he was treated by Dr. Veasy.
29. The Full Commission finds that defendants produced sufficient evidence upon which to find that plaintiff's termination was for reasons unrelated to his May 8, 2008 injury by accident and was for reasons for which a non-disabled employee would also have been terminated. However, plaintiff has produced sufficient evidence upon which to find that his disability and inability to earn wages subsequent to April 30, 2009 was causally related to his May 8, 2008 injury by accident.
30. Based upon the credible medical and vocational evidence of record and as the result of his May 8, 2008 injury by accident, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period of November 21, 2008 through the present and continuing.
31. Plaintiff's average weekly wage at the time of injury was $684.53, which yields a compensation rate of $456.58.
32. The Full Commission, upon review of the evidence of record, finds that defendants' defense of this matter was unreasonable and indicative of stubborn, unfounded *Page 10 
litigiousness. Although Defendants filed a Form 60 Employer's Admission of Employee's Right to Compensation
on January 25, 2010, the actions of defendants through the time of the hearing before the Deputy Commissioner indicate that they had denied plaintiff's claim. Defendants were aware of plaintiff's need for surgery as of plaintiff's visit with Dr. Veasy on October 29, 2008. On November 18, 2008, Dr. Brenner agreed with Dr. Veasy's opinion that surgery was warranted. Despite the surgical recommendation of Dr. Veasy and Dr. Brenner, defendants had failed to authorize the surgery as of July 31, 2009, the date of the hearing before the Deputy Commissioner. Additionally, the Full Commission finds that defendants were without grounds to deny the credibility of plaintiff with regard to his injury when plaintiff's testimony was corroborated by the testimony of Mr. Harris, Mr. Sanchez, Mr. Sloan, and Mr. Dupree. For these reasons, the Full Commission finds that defendants' defense of this matter was unreasonable and indicative of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, the claimant has the burden of proving that their claim is compensable, and the burden of proving each and every element of compensability. Henry v. A.C. LawrenceLeather Company, 231 N.C. 477, 57 S.E.2d 760 (1950);Harvey v. Raleigh Police Department,96 N.C. App. 28, 384 S.E.2d 549 (1989). The evidence on causation must be such as to take the case out of the realm of conjecture and remote possibility such that there is sufficient, competent evidence tending to show a proximate causal relation. Holley v. Acts,Inc., 357 N.C. 228; 581 S.E.2d 750 (2003). *Page 11 
2. On May 8, 2008, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's May 8, 2008 injury by accident caused or significantly aggravated the right shoulder conditions for which he was treated by Dr. Veasy. N.C. Gen. Stat. § 97-2(6); Holley v.Acts, Inc., 357 N.C. 228; 581 S.E.2d 750 (2003).
4. Based upon the totality of the credible evidence of record, the Full Commission concludes that defendants produced sufficient evidence upon which to find that plaintiff's termination was for reasons unrelated to his May 8, 2008 injury by accident and was for reasons for which a non-disabled employee would also have been terminated. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 587 (1996). However, plaintiff has produced sufficient evidence upon which to find that his disability and inability to earn wages subsequent to April 30, 2009 was causally related to his May 8, 2008 injury by accident. Id.
5. Based upon the credible medical and vocational evidence of record and as the result of his May 8, 2008 injury by accident, plaintiff is entitled to have defendants pay to him ongoing total disability compensation at the rate of $456.58 per week for the period of
November 21, 2008, through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As the result of his May 8, 2008 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the surgery recommended by Dr. Veasy, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1. *Page 12 
7. Because defendants' defense of this matter was unreasonable and indicative of stubborn, unfounded litigiousness, plaintiff is entitled to sanctions in the form of attorney's fees. N.C. Gen. Stat. § 97-88.1. This attorney's fee shall not be deducted from the amounts due plaintiff, but instead shall be paid to counsel for plaintiff in addition to those amounts.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the weekly rate of $456.58 from November 21, 2008, until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. These benefits are not subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his May 8, 2008 injury by accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the surgery recommended by Dr. Veasy, when the medical bills have been approved according to established Commission procedures.
3. As a sanction pursuant to N.C. Gen. Stat. § 97-88.1, an attorney's fee equaling twenty-five percent (25%) of the indemnity compensation awarded to plaintiff herein is approved for counsel for plaintiff to be paid by defendants. This is to be taxed as a cost to defendants and shall not be deducted from the indemnity benefits owed to plaintiff. The sanction and fee based upon the accrued portion of benefits owed to plaintiff shall be paid to counsel for plaintiff in a lump sum, with counsel for plaintiff receiving thereafter a monthly check equal to twenty-five percent (25%) of the monthly compensation being paid to plaintiff. *Page 13 
4. Defendants shall pay the costs.
This ___ day of July 2010.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 *Page 1